RODGERS *v.* CADES.

Opinion delivered March 25, 1912.

1. LOGS AND LOGGING—CONTRACT—MUTUALITY.—Where plaintiff, having a right to cut timber from State lands, sold defendant 500,000 feet of timber to be cut therefrom, and stipulated that it is "understood that party of second part shall be under no obligation to cut any timber

after the State authorities shall have declined to allow him any further time," the obligation of the contract being mutual, plaintiff was not bound to furnish any timber after the State authorities declined to allow him further time to cut same.   (Page 190.)

2.   ATTACHMENT—DISSOLUTION—DAMAGES.—When an attachment was dissolved, and there was evidence tending to prove that defendant sustained damages by reason thereof, it was error to refuse to permit the jury to assess whatever damages defendant sustained by reason thereof. (Page 191.)

Appeal from Lincoln Circuit Court; *Antonio B. Grace,* Judge; reversed in part.

### STATEMENT BY THE COURT.

The appellee sued appellant for 300,000 feet of timber at $4 per thousand, alleging that appellant had obtained that much timber for which he had not paid, under a contract by which appellee sold to appellant all the timber on a certain tract of land.   The contract, after describing the land, provides as follows:

"For and in consideration of $4 per thousand feet, board measure, to be paid as hereinafter set out, party of the first part has this day granted, sold and conveyed unto party of second part, his heirs and assigns, all white oak timber on said land, or so much as party of second part will be able to cut and remove within time required by State to enable them to plant and cultivate a crop on the land above described.   It being understood that party of second part shall be under no obligation to cut any timber after the State authorities shall have declined to allow him any further time.

"It is further understood and agreed between the parties hereto that there is approximately 500,000 feet of timber on the above-described quarter section, and that, after the party of the second part shall have cut all the timber on said quarter section, if there should not be 500,000 feet, then and in that event the party of the second part is to have the right to cut enough timber off of the adjoining quarter section, which also belongs to party of first part, to make up 500,000 feet all told.''

The complaint alleged that some of the timber had been manufactured into staves of the value of $500, and that appellant was about to ship these away to defeat the claim of appellee. The appellee prayed for and was granted an order of attach-

ment, and same was executed by the sheriff taking possession of the staves mentioned therein.

The appellant answered, admitting that he had cut a quantity of the timber included in the contract, of the value of $208.86. He specifically denied the allegations on which the attachment was issued. He set up that he had sold the entire output of the 500,000 feet of timber at a net profit of $8.50 per thousand feet, that appellee had failed and refused to furnish appellant the amount of timber purchased under the contract, and had thereby breached the contract, to appellant's damage in the sum of $3,000.00. Appellant also alleged that he was damaged by reason of the wrongful attachment in the sum of $300. He prayed judgment for these alleged damages.

The appellee answered the counterclaim, denying its allegations. The bill of exceptions recites as follows:

"After examining plaintiff's complaint, defendant's answer and amended answer and the counterclaim against plaintiff, and plaintiff's answer to defendant's counterclaim, the court, of its own motion, before any testimony was adduced, and before opening statement of counsel, stated to the jury that the defendant was not entitled to recover on his counterclaim, and that the jury should not take into consideration defendant's counterclaim in arriving at their verdict."

The undisputed evidence showed that the land on which the timber grew was the property of the State, that appellee had contracted to purchase the timber from the State. Appellant had cut the timber on the quarter section mentioned in the contract, and was proceeding to cut from the adjoining quarter when the warden in charge of the State farm stopped him. Appellant notified appellee of this, and requested appellee to "straighten the matter out," or designate some place for appellant to cut the balance of the 500,000 feet claimed by appellant. Appellee denied that he had sold appellant 500,000 feet of timber, and refused to further furnish him timber under the contract, and demanded pay for the timber that appellant had cut. Appellee then brought this suit and attached the staves in controversy.

There was evidence tending to prove that the sheriff had possession of the staves for more than a month before appellant

could get them released under bond, and that during that time many were stolen, and the staves were damaged by remaining in the sun unprotected.

The appellant asked the court to dissolve the attachment and to allow the jury to assess his damages for its wrongful issuance. The court dissolved the attachment, but refused to allow the jury to assess any damages. The court instructed the jury that appellant was not entitled "to recover anything whatever on his counterclaim."

*W. C. Adamson* and *C. P. Harnwell*, for appellant.

1. It was error to exclude the counterclaim. Kirby's Dig., §§ 6098-9 89 N. C. 205 34 Cyc. p. 695, notes.

2. Damages should have been allowed on the dissolution of the wrongful attachment. Kirby's Dig., § 381; 34 Ark. 710; 51 *Id*. 382; 68 *Id*. 170; 37 *Id*. 614.

WOOD, J. (after stating the facts.) Two questions are presented. First, did the court err in instructing the jury that appellant could not "recover anything whatever on his counterclaim?" Second, did the court err in refusing to permit the jury to assess damages for the wrongful issuance of the attachment?

1. Under the undisputed evidence, appellee was not liable to appellant on his counterclaim, because appellant was prevented by the State authorities from further cutting the timber. The contract provides in part as follows:

"It being understood that party of second part shall be under no obligation to cut any timber after the State authorities shall have declined to allow him any further time." Under this express stipulation, appellant was under no obligation to cut any timber after the State authorities declined to allow him further time to cut same. The obligations of the contract were mutual. As appellant was not bound to take the timber after the State had prevented further cutting, neither was appellee bound to furnish it after the State had declined to allow further time for its cutting. This contingency was contemplated by the parties to the contract, and was covered by the clause above quoted. Other provisions are as follows: "It is further agreed that the party of the second part shall have the right to cut and manufacture into staves only such part

of the timber as he may choose, and that he shall only be required to pay for such cuts as he may use. The party of the second part shall cut and remove said timber as expeditiously as possible, but in no event shall he be liable to the party of the first part for any greater amount of timber than he shall have cut and removed to the said station or landings."

These provisions all show that the contract did not contemplate that appellee would be bound to furnish appellant full 500,000 feet of timber, but only so much of the estimated amount as under the contingency mentioned he might be able to cut and use. The court therefore did not err in its construction of the contract, and in eliminating the question of damages under the counterclaim.

2. The court, having dissolved the attachment, erred in not permitting the jury to assess whatever damages the proof showed appellant sustained by reason of the attachment. Such damages are authorized by statute (Kirby's Digest, § 381), and the plaintiff and his sureties on the attachment bond are liable for same.

The damages are allowed as compensation to the defendant in the attachment for the loss he has sustained. *Holliday* v. *Cohen*, 34 Ark. 710; *Boatwright* v. *Stewart*, 37 Ark. 614; *Goodbar* v. *Lindsley*, 51 Ark. 382; *Adkins* v. *Lacy*, 68 Ark. 170.

There was evidence tending to prove that appellant had sustained damages by reason of the attachment. It was a question that the court should have submitted to the jury. There was evidence to support the verdict and judgment for $208.86, and the same is affirmed, but the cause is remanded with directions to determine what damage appellant sustained by reason of the attachment and for further proceedings pursuant to law.